**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

vs.                                                                          Civil No. 08-666 JB/RHS
                                                                          Crim. No. 03-2106 JB

DONALD H. GOODE,

       Defendant/Movant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

     1.  THIS MATTER comes before the Court upon Movant Donald H. Goode's "Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion I"), filed July 17, 2008 **[Doc. No. 1]** and the claim asserted in Movant's motion to amend ("Motion II"), filed November 5, 2008 **[Doc. No. 9]** (together, "§ 2255 Motion").[1]  Respondent Government has filed a response and an amended response.  (See "Respondent United States' Answer in Opposition to Movant's Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255, filed on July 30 [sic], 2008" ("Answer"), filed Nov. 13, 2008 **[Doc. No. 10]**; "United States' Amended Response to Movant's/Defendant's Motion to Supplement and/or Clarify § 2255 Motion to Vacate, Set Aside or Correct Sentence" ("Amended Response"), filed Feb. 10, 2009).

---

      [1]The Court permitted Mr. Goode to amend his motion and add a claim that counsel was ineffective for failing to investigate documents demonstrating "that the state convictions used to 'charge him as a Career-Offender were invalid because they did not meet the statutory elements of the offenses.'" (Memorandum Opinion and Order Adopting in Part Magistrate Judge's Proposed Findings, Granting the Motion to Amend, and Affirming the Order Denying the Motion for Discovery and Hearing at 4, filed Feb. 5, 2009 **[Doc. No. 17]** (quoting motion to amend at 3¶ 15)).

*Background*

2.  "On October 23, 2003, a grand jury indicted Mr. Goode on one count of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  Section 922(g)(1) makes it unlawful for anyone who has been convicted of a crime punishable by imprisonment for more than a year 'to . . . possess in or affecting commerce[] any firearm.'  The firearm that Mr. Goode was charged with possessing had been recovered from his vehicle by police officers after he was arrested in Capitan, New Mexico, on unrelated charges."  United States v. Goode, 483 F.3d 676, 678 (10th Cir. 2007).  Following a jury trial, Mr. Goode was found guilty of being a convicted felon in possession of a firearm.  See id.  The Court subsequently "sentenced Mr. Goode to 188 months' imprisonment."  Id. 483 F.3d at 680.  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") affirmed Mr. Goode's conviction and sentence on direct appeal.  See id. 483 F.3d at 682.

3.  Mr. Goode, proceeding *pro se*, raises six (6) general grounds of error in his § 2255 Motion:[2]

(I) The Court lacked criminal jurisdiction;
(II) The Court erred in denying a continuance;
(III) Movant was denied his right to a speedy trial;
(IV) Movant was deprived of his right to testify;
(V) Movant was denied his right to compulsory process for obtaining witnesses; and
(VI) Ineffective assistance of counsel due to cumulative impact of multiple deficiencies.

4.  The Court notes that none of the grounds asserted in the § 2255 Motion were raised on direct appeal.  "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal."  United States v. Warner, 23 F.3d 287, 291 (10th Cir.

---

[2]The Court has re-ordered Mr. Goode's allegations of error for convenience.

1994). A claim not raised on direct appeal is procedurally barred unless the defendant can establish cause for his default and prejudice resulting therefrom, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). Ineffective assistance of counsel may constitute "cause" excusing a procedural default. Cook, 45 F.3d at 392. Accordingly, with the exception of Mr. Goode's jurisdictional challenge, the grounds of error alleged in the § 2255 Motion are procedurally barred, except to the extent to which they form a basis for a claim of ineffective assistance of counsel.

*Ineffective Assistance of Counsel*

5. To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying the Strickland test to appellate as well as trial counsel). To demonstrate deficient conduct, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. In doing so, Movant "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998) (quoting Strickland, 466 U.S. at 689); see also Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). "Constitutionally deficient" performance means that counsel's performance was completely unreasonable, not merely wrong. Boyd v. Ward, 179 F.3d 904, 913 (10th Cir. 1999) (citing Strickland, 466 U.S. at 687).

6. To establish the second prong, a defendant must show prejudice resulting from counsel's performance. Strickland, 466 U.S. at 687. That is, the "defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694. "When a defendant challenges a conviction, the question [in ascertaining prejudice] is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

   *Ground I - lack of jurisdiction*

   7. Mr. Goode claims that he "is not subject to the jurisdiction of this court" and "demands an immediate reversal of the conviction and sentence." (Motion I at 6.11). At least two of Mr. Goode's former attorneys aver that Mr. Goode argued that the court lacked jurisdiction over his criminal case on various grounds. However, both attorneys concluded that these jurisdictional arguments lacked merit. (See Affidavit of Alan Wagman at 6-7 ¶¶ 35-36, Ex. 2 attached to Answer; Affidavit of Kenneth Del Valle ("Del Valle aff.") at 1-2 ¶¶ 5, Ex. 3 attached to Answer).

   8. At his sentencing hearing on March 17, 2006, Mr. Goode again questioned the jurisdiction of the Court. The Court explained that Congress passed the federal statute, 18 U.S.C. § 922(g)(1), under which Mr. Goode was prosecuted and gave federal district courts jurisdiction "to try those crimes that violate federal law." (Transcript of Sentencing Hearing ("Sentencing") at 16-17, Mar. 17, 2006). Pursuant to 18 U.S.C. § 3231, the "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Mr. Goode fails to persuade the undersigned either that the Court lacked jurisdiction over the underlying criminal proceedings or that his attorneys erred in failing to pursue this argument. Accordingly, Mr. Goode's claim for relief on

4

this basis should be denied.

*Grounds II and III - denial of continuance; right to speedy trial*

9.  In ground II, Mr. Goode alleges that the Trial Court erred in denying his oral request for a continuance on the first day of trial.[3] However, even assuming error in denying his request for a continuance, Mr. Goode's conclusory assertions fail to allege or demonstrate that he was prejudiced as a result of the denial. Moreover, a review of the record does not indicate that Mr. Goode was prejudiced. Accordingly, Mr. Goode's claim for relief on this basis should be denied.

10.  While he alleges error in ground II based on a denial of a continuance, Mr. Goode contends in ground III that he was deprived of his right to a speedy trial and that counsel ignored his demands to assert his speedy trial rights. Liberally construing his allegations, Mr. Goode apparently contends that his counsel erred in failing to move for dismissal based on a violation of his speedy trial rights. However, a review of the record reveals that defense counsel asserted Mr. Goode's speedy trial rights prior to closing arguments, and the Trial Court refused to dismiss the case on that basis.[4] Moreover, assuming *arguendo* that counsel erred in failing to assert Mr. Goode's speedy trial rights, such error was mitigated to the extent that the Trial Court considered and denied Mr. Goode's oral motion for dismissal on this basis prior to jury selection.[5]

---

[3] Assuming that his attorney erred in failing to move for a continuance, such error was mitigated by the Trial Court's consideration of Mr. Goode's request for a continuance.

[4] (See Transcript of Jury Trial Vol. II ("Trial II") at 245-47, Aug. 24, 2005).

[5] (See Transcript of Jury Selection ("Jury Sel.") at 8:9-16 (Mr. Goode inquiring why the Speedy Trial Act cannot be used to have "this case dismissed against me?"); 11:1-9 (Mr. Goode arguing that he has been "prejudiced . . . [due to] due process and the speedy trial violations that have been waived"; requesting "this case to be dismissed based on violations of my constitutional rights"), 17-20 (Trial Court noting Mr. Goode's "request is for the motion to

11. The Trial Court found that "there have been a number of motions to continue the trial . . . . But the judges, I think, have looked at each one of the motions, and there was good grounds at the time to waive the Speedy Trial Act at the time." (Jury Sel. at 19:5-10). The Trial Court specifically noted that the competency hearing "waive[d] the Speedy Trial Act" and observed that the change of counsel "has slowed some things down." (Jury Sel. at 19:10-12, 17-19). The Trial Court explained that "we are having a trial as promptly as I could when I became the judge on this case." (Jury Sel. at 19:20-21).

12. Finally, nothing indicates that Mr. Goode was prejudiced by counsel's failure to assert his speedy trial rights. As previously noted, the Trial Court addressed Mr. Goode's allegation that his speedy trial rights were violated and denied his motion for dismissal. Nothing suggests that the outcome would have been any different had Mr. Goode's counsel asserted Mr. Goode's speedy trial rights under either the Speedy Trial Act or the Sixth Amendment. Accordingly, Mr. Goode's claim for relief on this basis should be denied.

*Ground IV - right to testify*

13. Mr. Goode apparently alleges that he was deprived of his right to testify because his trial counsel was ineffective in "demanding" throughout the trial that he not testify. Specifically, Mr. Goode contends that his trial counsel promised that if Mr. Goode did not testify, counsel "would have at least (2) two witnesses who would testify, in my stead, challenging the perjurious statements made by the government witnesses and would introduce a taped Preliminary Parole Revocation Hearing . . . ." (Motion I at 6.1). After counsel told the Trial Court that Mr. Goode

---

dismiss or for various reasons, [and determining that] the Court will proceed on to trial"); 16:14-17 (Trial Court stating that Mr. Goode's "motions are denied . . . . [and that] we're going to have a trial"), Aug. 22, 2005).

would not testify, counsel allegedly told Mr. Goode that he "was *not* going to produce the witnesses and tape recording . . . [as] promised." (Id. (emphasis added)).

14. Trial counsel Kenneth Del Valle offers a different account. Mr. Del Valle avers that he initially "advised Mr. Goode to testify . . . . [in order] to humanize him to the jury and to directly contradict those who would testify that he had confessed the possession of the pistol to them." (Del Valle aff. at 7 ¶ 25, Ex. 3, attached to Answer). However, as the trial progressed, Mr. Del Valle became concerned about some of Mr. Goode's proposed testimony, the possibility that Mr. Goode might be facing bank robbery charges, and whether Mr. Goode "might go off on a self destructive tangent in connection with the alleged bank robbery while on direct or cross examination." (Id. at 7-8). Mr. Del Valle explained, that in light of his concerns: "I had reversed my prior opinion and realized that one way or another Mr. Goode's testimony would just tighten the noose about his neck . . . . [and Mr. Goode] agreed." (Id. at 8 ¶ 28). Mr. Del Valle averred that "[a]fter discussing all the pros and cons of testifying during the trial Mr. Goode finally decided not to testify." (Id.).

15. The record indicates that after the Government rested its case, Mr. Del Valle was still "discussing with his client whether or not he will testify . . . ." (Transcript of Jury Trial Vol. I ("Trial I") at 201, Aug. 23, 2005). After a recess, Mr. Del Valle informed the Trial Court that Mr. Goode "is going to follow the advice I have given him not to testify." (Id. at 202:19-21). When asked by the Trial Court whether the defense will "have any other witnesses," Mr. Del Valle responded: "No, your Honor. I will close when the jury comes in."[6] (Id. at 202:22-25). Mr. Goode did not object to Mr. Del Valle's statement at that time, nor did he object when Mr.

---

[6] Immediately following this statement, a discussion of jury instructions and scheduling matters ensued and a recess took place before the jury returned. (Trial I at 203-11).

Del Valle indicated that "the defense rests." (Id. at 211). After the defense rested, the Trial Court instructed the jury and informed it that closing arguments would take place the next morning.

16. The next day, prior to closing arguments, Mr. Del Valle advised the Trial Court that Mr. Goode wanted to testify and moved "that the proofs be opened and that Mr. Goode be allowed to testify on his own behalf." (Trial II at 240-43). The Trial Court denied Mr. Goode's motion to permit him to testify. (Trial II at 244-46). However, the Trial Court also stated that after closing arguments, "if there's other issues you need to bring up, we can do so at that time." (Trial II at 254:14-16). Following closing arguments, Mr. Goode was permitted to make an offer of proof and the Trial Court made a record regarding its denial of Mr. Goode's motion to reopen the evidence. (See Trial II at 318-23).

17. In pursuing his motion to reopen the evidence before the Trial Court, Mr. Goode argued at length as to why he should be permitted to testify. However, Mr. Goode did not argue at trial, as he does in the instant motion, that he was deprived of his right to testify because his silence was improperly obtained in exchange for empty promises from trial counsel.[7] Not only does this Court find Mr. Goode's allegation conclusory, but a review of the record fails to support such an argument. Finally, even assuming deficient conduct on the part of counsel, Mr. Goode fails to demonstrate that he suffered prejudice as a result. Accordingly, Mr. Goode's claim for relief on this ground should be denied.

*Ground V - right to compulsory process to obtain witnesses*

---

[7]Nothing indicates that Mr. Goode would have hesitated to make this argument before the Trial Court. A review of the record reveals that Mr. Goode was neither intimidated by court proceedings, nor reluctant to allege error with respect to counsel's conduct.

18. Mr. Goode alleges ineffective assistance based on counsel's failure to call witnesses to testify on his behalf.  Specifically, Mr. Goode appears to argue that his trial counsel erred in failing to subpoena two officers[8] who were present at a preliminary parole revocation hearing and allegedly "could of rebutted Parole officer Gary Markel's testimony."  (Motion I at 6.4).  Mr. Goode contends that when he informed counsel about the two officers during trial, trial counsel failed to investigate this information and "told me that I was bothering him with my unwarranted questions and my unrelevant behavior and was hindering his defense . . . ."  (Motion I at 6.4).

19. Neither the Government's Response nor Mr. Del Valle's affidavit specifically address Mr. Goode's allegation that trial counsel erred in failing to investigate this information and/or subpoenaing the officers to testify.  However, the Court notes that trial counsel's alleged failure to subpoena the two officers was not raised before the Trial Court when Mr. Goode moved to reopen the evidence and made his offer of proof at trial.  (See note 7, supra).  In his affidavit, Mr. Del Valle avers that Mr. Goode's allegation that he "was ineffective for not subpoenaing witnesses is without merit."  (Del Valle aff. at 6 ¶ 22).  Mr. Del Valle believed that "[t]he only piece of evidence that might have required a witness was the access to the impound lot at Capitan . . . . [and] that [evidence] was clearly and favorably established by Government witness Kelly Kirsling."  (Del Valle aff. at 6 ¶ 22).

20. Mr. Goode also argues that trial counsel erred in failing to call two investigators to testify.  This issue was apparently raised before the Trial Court in the context of Mr. Goode's motion to reopen the evidence and/or offer of proof.  (See Trial II at 311 (Mr. Del Valle stating

---

[8] Mr. Goode identifies one of the officers as "Mr. Flowers."  (Motion I at 6.4).

that "many of these things in this [investigative] report may in fact be prejudicial to my client" and "that I didn't need these investigators to come testify"). The Trial Court permitted Mr. Goode to attach the reports to the minutes as clerk's exhibits, (see id. at 312:4-15), but was not persuaded to reopen the evidence on this basis.

21. While not entirely clear, it appears that Mr. Goode also contends that his trial counsel erred in failing to subpoena Dean Shelby to testify. In his affidavit, Mr. Del Valle stated "[t]he problem was that any connection between Dean Shelby and Mr. Goode would have been disastrous because of the inference that could be forcefully made by the Government that the pistol traveled from the home of Maxine Shelby to Dean Shelby and to Mr. Goode." (Del Valle aff. at 11 ¶ 35). Mr. Del Valle was concerned that Mr. Shelby might testify "that he gave the pistol in question to Mr. Goode for payment of a drug debt." (Id.). Indeed, Mr. Del Valle averred that he "did not want to give the Government serious reason to go find Dean Shelby." (Id.).

22. Mr. Goode's allegations that trial counsel erred in failing to subpoena witnesses do not establish that his counsel's conduct was either objectively unreasonable or caused the outcome of the criminal proceeding to be different. Trial counsel's decision not to subpoena witnesses to testify on behalf of his client in this case was a strategic decision. See Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997) (citing Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995) (explaining that "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness").

23. Some of Mr. Goode's allegations of ineffective assistance amount to an argument that counsel could have done a better job. However, "the question under Strickland is not

whether counsel could have done more, but whether counsel's decision not to do more was '[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  Turrentine v. Mullin, 390 F.3d 1181, 1209 (10th Cir. 2004) (quoting Strickland, 466 U.S. at 691) (brackets in original).  Mr. Goode fails to demonstrate that counsel's conduct fell below this objective standard.

24.  In any event, even assuming that trial counsel's conduct was deficient, Mr. Goode has not shown a reasonable probability that the result of the criminal proceeding would have been different had the proposed witnesses been subpoenaed to testify.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt . . . In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury."  Yarrington v. Davies, 992 F.2d 1077, 1080 (10th Cir. 1993) (citations omitted).  In light of the totality of the evidence before the jury, counsel's alleged failure to subpoena certain witnesses does not undermine the Court's confidence in the outcome of the trial proceedings.[9]  Accordingly, the Court recommends that relief based on ground V be denied.

*Ground VI - multiple deficiencies / cumulative impact*

25.  In ground VI, Mr. Goode alleges that each of his counsel was ineffective based on numerous complaints.  The majority of the allegations and complaints in ground VI are vague,

---

[9]The evidence against Mr. Goode included: (1) evidence that a firearm was recovered from his vehicle (Mr. Goode was one of two registered owners of the vehicle, the other being his former girlfriend, Kelly Krisling); (2) Ms. Krisling's testimony that the firearm did not belong to her and that after his arrest, Mr. Goode asked her to tell authorities that the firearm belonged to her; (3) testimony of a former cellmate, Bernard Fish, that Mr. Goode admitted that he put the firearm in the vehicle; and (4) testimony of Mr. Markel that Mr. Goode admitted that he put the firearm in the vehicle.

conclusory and/or have been addressed in the Court's previous discussion of grounds I through V, above, and should be dismissed accordingly. The Court will address Mr. Goode's remaining allegations below.

26. Mr. Goode apparently alleges that his trial counsel, Mr. Del Valle, erred in failing to move for a new trial based on Dean Shelby's willingness to testify as to Mr. Goode's innocence. Mr. Goode's apparent implication that the motion would have been granted by the Trial Court is sheer speculation. Moreover, as previously discussed, trial counsel made an objectively reasonable strategic decision not to subpoena Mr. Shelby as a witness. Thus, Mr. Goode's argument on this ground fails for essentially the same reasons set forth in the Court's discussion of ground V.

27. Mr. Goode alleges that his appellate counsel, Mr. Leon Schydlower, was ineffective because he failed to meet with him, would not answer his letters and "did not bring up any of the requested appeal defenses." (Motion I at 6.10). Specifically, Mr. Goode alleges that Mr. Schydlower erred in failing to assert on appeal the issue of Mr. Shelby's alleged willingness to testify as to Mr. Goode's innocence.[10]

28. In his affidavit, Mr. Schydlower avers that he "arranged to meet with Mr. Goode in person . . . to review the issues he wanted presented in his appeal, but was told by his counselor that Mr. Goode refused to meet with me." (Affidavit of Leon Schydlower ("Schydlower aff.") at 4 ¶ 27, Ex. 4, attached to Response). Mr. Schydlower indicated that the letters he received from Mr. Goode "were unintelligible." (Id.). Mr. Schydlower stated that while Mr. Goode directed him to withdraw as counsel, he also "refused to comply with the orders sent to him to effect my

---

[10]Mr. Goode apparently alleges that Mr. Shelby "wrote me a letter signed to this effect, which I sent to Mr. Shydlower [sic] to use in the direct appeal . . . ." (Motion I at 6.9).

termination as [appellate] counsel." (Schydlower aff. at 4-5 ¶ 27). Mr. Schydlower avers that under the circumstances, he "prosecuted [Mr. Goode's] appeal as best I could." (Id. at 5 ¶ 27).

29. Mr. Schydlower specifically responded to Mr. Goode's allegation that Mr. Schydlower erred in failing to assert Mr. Shelby's potential testimony as an appellate issue. Mr. Schydlower explained that "[i]f such an argument could have been gleaned from any of Mr. Goode's letters . . . I would have explained to him that any such 'innocence letter' would not be part of the Record on Appeal, and that any claim associated with the failure to call this alleged witness at trial would need to be developed during his habeas action." (Schydlower aff. at 5 ¶ 28). Counsel need not raise meritless issues on appeal. Indeed, "the Sixth Amendment does not require an attorney to raise every *nonfrivolous* issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (emphasis added). Mr. Goode's allegations fail to establish that appellate counsel constitutionally erred in failing to raise this issue on appeal.

30. Finally, even assuming that appellate counsel's conduct fell below the requisite objective standard of reasonableness, Mr. Goode does not demonstrate that he was prejudiced by such conduct. That is, Mr. Goode fails to show a reasonable probability that absent counsel's errors on appeal, the outcome of his proceeding would be different. See Banks, 54 F.3d at 1516 (explaining that an inquiry regarding prejudice is whether appellate counsel's errors undermine the court's confidence in defendant's conviction).

31. Mr. Goode also alleges that he received ineffective assistance of counsel at trial, at sentencing and on appeal because his counsel did not properly investigate available documents showing that the convictions "used to charge [Mr. Goode] as a Career Offender were invalid because they did not meet the statutory elements of the offenses." (Motion II at 3 ¶ 15). Mr. Goode's trial counsel, Mr. Del Valle, averred that he personally investigated Mr. Goode's

allegations that some of the prior convictions listed in the Presentence Report ("PSR") were incorrectly attributed to him and/or illegally obtained due to lack of counsel. (See Del Valle aff. at 12 ¶¶ 38-39). Following his investigation, Mr. Del Valle concluded that all of the prior convictions listed in the PSR "were his and he had counsel." (Id. ¶ 39). Moreover, Mr. Del Valle "found some other convictions that had not been discovered by the probation officer." (Id.).

32. At the sentencing hearing, Mr. Del Valle explained to the Sentencing Court that he reviewed the PSR with Mr. Goode and investigated Mr. Goode's allegations that the prior convictions contained therein were either improperly attributed to him and/or illegally obtained. (Sentencing at 6). Following a lengthy hearing, in which the Sentencing Court heard from prosecution and defense counsel and engaged in extensive discussion with Mr. Goode, the Sentencing Court adopted the PSR's factual findings and USSG calculations as its own.[11] (See Sentencing Proceedings, filed Mar. 17, 2006 **[Crim. Doc. 87]**, United States v. Goode, 2:03-cr-2106 JB). After taking into account "not only the Guidelines but other sentencing goals[,]" the Sentencing Court concluded "that a sentence at the low end of the Guidelines is appropriate" and sentenced Mr. Goode to serve 188 months. (Sentencing at 62-63).

33. "[W]ith the sole exception of convictions obtained in violation of the right to counsel, a defendant has no right to . . . challenge [the validity of previous state convictions used to enhance his federal sentence] . . . in his federal sentencing proceeding." Daniels v. United States, 532 U.S. 374, 376 (2001) (citing Custis v. United States, 511 U.S. 485, 487 (1994)). An

---

[11]The Sentencing Court found that Mr. Goode's "offense level is 33 and the criminal history category is IV . . . . [and] [t]he guideline imprisonment range is 188 to 235 months." (Sentencing at 62:7-12).

individual challenging his federal sentence through a § 2255 motion is similarly precluded from attacking the validity of his prior convictions.  See id.  After reviewing the PSR and conducting a lengthy and thorough hearing, the Sentencing Court did not find Mr. Goode's prior convictions invalid for purposes of sentence enhancement.  Nor does this Court find anything in the record suggesting the existence of the "rare circumstances in which § 2255 [relief] would be available" to Mr. Goode on this basis.  Daniels, 532 U.S. at 376.  Accordingly, the Court recommends that relief on this ground be denied.

      34.  To the extent that Mr. Goode argues all of the alleged deficiencies set forth above comprise "cumulative error," such an argument should be rejected because each ground lacks merit.  Additionally, the Court finds that it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Mr. Goode is not entitled to relief.  Thus, the Court recommends that Mr. Goode's request for an evidentiary hearing be denied.  See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988).

      **WHEREFORE**,

      **IT IS RESPECTFULLY RECOMMENDED** that:

(1)     Movant Donald H. Goode's § 2255 Motion be DENIED and this civil proceeding be DISMISSED with prejudice;

(2)     Movant Goode's request for an evidentiary hearing be DENIED; and

(3)     any pending motions be DENIED as moot.

**NOTE:**  Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party wants

to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE